UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEELU PAL, <br><br> Plaintiff, <br><br> v. <br><br> JERSEY CITY MEDICAL CENTER, et al., <br><br> Defendants. | Civil Action No. 11-6911 (SRC) <br><br> **OPINION** |

**CHESLER**, District Judge

    This matter comes before the Court on the motion for summary judgment filed by Defendants University of Medicine and Dentistry of New Jersey ("UMDNJ"), Peter Scholz, M.D. and Dorian Wilson, M.D. (collectively the "UMDNJ Defendants"). Defendants Jersey City Medical Center ("JCMC"), the Medical Dental Staff and Nathaniel Holmes, M.D. (collectively, the "JCMC Defendants") have joined in the motion. Pro se Plaintiff Neelu Pal opposes the motion for summary judgment. The Court has considered the papers filed by the parties and proceeds to rule without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will deny the motion without prejudice.

I.    **BACKGROUND**

    This lawsuit arises out of the denial of Plaintiff Pal's application for hospital privileges at JCMC. Pal, who is a female of Indian origin, is a medical doctor. She had been a participant in the cardiothoracic surgery residency training program at UMDNJ-Robert Wood Johnson Hospital ("RWJ"). In February 2009, some months after RWJ informed Pal that it would not

1

renew her contract for a second year in the residency program, Pal resigned from RWJ. A month after resigning, Pal, who was already a board certified general surgeon, filed an application for hospital privileges at JCMC. The application was denied. She alleges that Dr. Holmes, the chair of JCMC's credentials committee, had informed her that certain complaints she had made while at RWJ, which the Court will discuss further below, would likely result in the denial of her privileges. She also alleges that while considering Pal's application, Dr. Holmes spoke with two of her UMDNJ references, Dr. Scholz, the program director of cardiothoracic surgery at RWJ, and Dr. Wilson, program director of the general surgery program at UMDNJ-Newark. According to the Amended Complaint, Scholz and Wilson provided Holmes with negative information about Pal, contrary to the positive written recommendations they had written. On appeal by Pal, JCMC's Medical Executive Committee upheld the decision to deny her hospital privileges. The appeal was decided on August 18, 2011, and on October 4, 2011, JCMC filed an Adverse Action Report with the National Practitioner Data Bank memorializing the denial of privileges.

This federal suit was filed by Pal on November 23, 2011. She asserts federal civil rights claims of conspiracy in violation of 42 U.S.C. § 1985 (Counts I and II) against Holmes, Wilson and Scholz, alleging that they conspired to deprive her of her "expected recommendations" on the basis of her gender and/or national origin. The Amended Complaint further asserts a cause of action pursuant to the New Jersey Law Against Discrimination ("NJLAD") against UMDNJ and Scholz (Count VI). It also pleads for relief against the JCMC Defendants under a number of common law theories (Counts III through VI).

In the meantime, Pal had already filed a separate lawsuit in New Jersey state court against RWJ and several RWJ doctors alleging that their decision not to renew her contract for a second

year in the cardiothoracic surgery residency program was a retaliatory action for Pal's complaints to Scholz and other RWJ doctors that staff members had made allegedly derogatory remarks to Pal concerning her ethnicity and gender. She also alleged that the non-renewal was discriminatory on the basis of sex and national origin in violation of the NJLAD. (The Court will refer to that litigation as the "State Action.") The State Action was initiated on February 19, 2010. It was during the pendency of the State Action that Plaintiff's appeal of the JCMC denial of privileges decision became final and the instant federal action was filed. The State Action proceeded and went to trial. The parts of the State Action record provided to this Court reflect that the conversations Holmes had with Pal's references were a topic covered during witness examination of Holmes and mentioned in both the opening statement and summation given by Pal's attorney. It appears that Pal's attorney argued that the negative references were a retaliatory act for Pal's complaints regarding discrimination at RWJ.

The jury returned a verdict in the State Action on April 12, 2013. It found that RWJ's decision not to renew her contract was done in retaliation for her communications regarding discrimination. It did not find that the negative references were an act of retaliation for those complaints made by Pal while a first-year resident at RWJ. On that subject, the verdict sheet states as follows:

> 7. Did Dr. Pal prove by a preponderance of the evidence that UMDNJ provided negative references about her to other health care facilities and, if so, that that conduct was retaliation, causally connected to her communications regarding discrimination?

(Ex. H. at 2.) To this question, the jury's unanimous response was "no." (Id.) Pal was awarded damages for the retaliatory non-renewal of the residency contract as follows: $200,000 for lost back pay, $1,000,000 for future pay, and $400,000 for past and future pain and suffering.

3

## II. DISCUSSION

The UMDNJ Defendants move for summary judgment on the three claims asserted against them – the § 1985 claims against Wilson and Scholz and the NJLAD claim against UMDNJ and Scholz – on two grounds.

First, they maintain that Plaintiff cannot prevail as a matter of law on her claims because the doctrine of collateral estoppel, also known as issue preclusion, precludes Pal from re-litigating issues that were adjudicated in the State Action. "Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (quoting New Hampshire v. Maine, 532 U.S. 742, 748 (2001)). The UMDNJ Defendants point out that a crucial allegation underlying each of the claims against them in this lawsuit is that Holmes had certain conversations with Wilson and Scholz in which the latter two, doctors employed by UMDNJ, made negative comments about Pal. However, the UMDNJ Defendants argue, the issue of whether UMDNJ provided negative references about Pal to other health care facilities was actually litigated and conclusively decided in the State Action, where the jury, according to UMDNJ, expressly found that no negative references had been given.

Second, the UMDNJ Defendants argue that the claims against them in this lawsuit arise out of the same set of facts involved in the State Action and are thus barred from litigation by the entire controversy doctrine. This doctrine holds that "the adjudication of a legal controversy should occur in only one court." DiTrolio v. Antiles, 142 N.J. 253, 267 (1995). It requires the

4

presentation in one lawsuit of all claims and defenses related to the underlying controversy, as well as the joinder of all parties with a material interest in that controversy. Id. The doctrine applies with equal force where the subsequent litigation is brought in federal court to assert a federal cause of action. Fioriglio v. City of Atlantic City, 963 F. Supp. 415, 421 (D.N.J. 1997). The UMDNJ Defendants argue that, like this action, the State Action arose, at least in part, out of the alleged negative references provided by UMDNJ doctors to Holmes and the denial of Pal's application for JCMC privileges as an alleged consequence of this action. They maintain that Plaintiff was thus required, under the entire controversy doctrine, to join in the State Action all claims and parties related to that set of facts.

The critical deficiency in the motion brought by the UMDNJ Defendants is a lack of evidence to support their analysis as to the applicability of either of these two doctrines. Rule 56(a) imposes on the moving party a burden to demonstrate, through proofs, that there that there is no genuine issue of material fact. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The UMDNJ Defendants base this motion on the affirmative defenses of issue preclusion and the entire controversy doctrine. When the moving party has the burden of proof at trial, as the UMNDJ Defendants would on their preclusion defenses to Plaintiff's claims, "that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). Rule 56(c) requires that a party asserting that there is no issue of material fact "must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c).

Here, the UMNDNJ Defendants have asserted there is no genuine dispute that the issue of Pal's negative references was litigated and decided in the State Action, such that collateral estoppel precludes her from re-litigating this issue. For collateral estoppel, or issue preclusion, to apply, four requirements must be met: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from re-litigating the issue was fully represented in the prior action. Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 249 (3d Cir. 2006). The record provided in support of this summary judgment motion, however, is insufficient to demonstrate that there could be no contested issue as to exactly what questions of law or fact were litigated in the State Action. The UMDNJ Defendants provide, at best, snippets of the State Action. Noticeably missing are a copy of the operative complaint at the time of trial and the jury charges. Without these minimal pieces of information, the Court cannot conclude that the State Action both involved the actual litigation of whether either Wilson or Scholz provided negative references to Holmes *and* resulted in the conclusion that they had not. The UMDNJ Defendants argue that the jury's response to Question 7 of the verdict sheet supports their position that the issue was actually litigated, that the jury determined that no negative references had been given and that such determination was essential to the verdict against Pal with respect to her claim that the alleged retaliation was accomplished through the references. A careful reading of Question 7, however, reveals that it is not entirely clear what issue the jury resolved when it answered "no." To repeat it, Question 7 asked whether Pal proved "that UMDNJ provided negative references about her to other health care facilities and, if so, [whether] that conduct was retaliation, causally connected to her communications regarding discrimination[.]" The UMNDJ Defendants assert that the jury concluded that UMDNJ had not provided negative references

about Pal. An equally plausible interpretation of the jury's response is that even though Pal had proven that negative references were given, she did not demonstrate that they were given in retaliation for her complaints about discrimination.

The argument that the § 1985 conspiracy claims and NJLAD claims in this action are barred on the basis of the entire controversy doctrine suffers from the same deficiency of proof. While the UMDNJ Defendants have characterized the State Action as having encompassed the negative references as they relate to the denial JCMC privileges, a decision which became final after the initial complaint in the State Action had been filed, the portions of the State Action record submitted do not make clear what transaction or series of transactions was at issue in the State Action. "In determining whether successive claims constitute one controversy for purposes of the [entire controversy] doctrine, the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions." DiTrolio, 142 N.J. at 267. Apparently, Plaintiff filed the State Action to remedy the non-renewal of her contract to participate in UMNDJ's cardio-thoracic residency program. While the conversations Holmes had with Wilson and Scholz about Pal had already occurred by the time the State Action was filed, the alleged consequence of that conduct Plaintiff seeks to litigate here – denial of Pal's application for JCMC privileges – did not accrue until after the State Action was underway. The Court notes that the UMDNJ Defendants have introduced evidence, including short excerpts from the opening statement and summation made by Plaintiff's counsel at trial, that the State Action litigation evolved to include the allegation that the negative references constituted an act of retaliation. They also present a statement of facts, submitted by Pal in support of a motion to amend the State Action complaint, in which she recites various facts involving the conversations between Holmes and Wilson and Holmes and Scholz and the

7

subsequent denial of privileges at JCMC. In other words, the statement set forth at least some of the facts on which the claims against the UMDNJ Defendants in this action are based.

On the other hand, there is some evidence that Plaintiff tried to bring all of her claims in one lawsuit. Plaintiff, in opposition to this motion, has submitted emails from June 2012 reflecting conversations between her attorney and adversary counsel proposing that all of the claims and parties in the State Action be joined in this federal action, at which point the State Action would be voluntarily dismissed. It appears that adversary counsel did not agree with this course of action, with JCMC counsel in particular stating that the actions involved significant differences making consolidation inappropriate and prejudicial, in JCMC's view. It further appears, from the parts of the record of the State Action provided to this Court in support of Defendants' motion for summary judgment, that thereafter, in or about October 2012, Pal's attorney filed a motion to amend the complaint in the State Action. As the Court noted, the statement of facts in support of the motion contained facts overlapping with the events underlying this litigation, but it is not clear, from the sparse documentation submitted by the UMDNJ Defendants, what claims or parties Pal sought to add. Nor is the outcome of the motion known to this Court.

Considering the evidence as a whole, there is certainly a strong suggestion that the controversy underlying the State Action was broader than the termination of Pal's cardiothoracic surgery residency at UMDNJ. Indeed, it may have overlapped with the controversy underlying this action sufficiently to trigger the restrictions of the entire controversy doctrine, or perhaps even the limitations imposed by the doctrine of res judicata, or claim preclusion, which "bars not only claims that were brought in a previous action, but also claims that could have been brought." In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008). Again, the problem is that an

8

incomplete portrait of the State Action has been provided.  The UMDNJ Defendants assert that the facts giving rise to this case are the same set of facts involved in the State Action, but they do not give any indication that the court permitted Pal to amend the complaint in the State Action to include facts and claims relating to the denial of JCMC privileges.  Without the operative complaint, jury charges, pertinent rulings and other necessary parts of the State Action record, this Court cannot determine the factual scope of the State Action and thus cannot conclude that the evidence demonstrates, without dispute, that Pal's previous suit bars her from proceeding with her claims here.

To prevail on this motion precluding Plaintiff's claims on entire controversy grounds, the burden is on the UMDNJ Defendants to demonstrate that the claims in this lawsuit arise from the same core set of facts as those at play in the previous suit.  DiTrolio, 142 N.J. at 267-68.  Moreover, for this or any other preclusionary doctrine to apply, "the party whose claim is being sought to be barred must have had a fair and reasonable opportunity to have fully litigated that claim in the original action."  Id. at 273 (quoting Cafferata v. Peyser, 251 N.J. Super. 256, 261 (App. Div. 1991)).  It is simply not clear from the record provided that either of these essential requirements have been satisfied, or more to the point, that no reasonable jury could find that Pal is not barred from proceeding with this litigation.

As such, the Court concludes that the UMDNJ Defendants have not established summary judgment in their favor is warranted, on either of the preclusionary doctrines raised in their motion.  Because, as the Court indicated in its discussion, it may be possible to meet the Rule 56 burden of demonstrating that the evidence shows, without reasonable dispute, that Plaintiff's claims are precluded, the Court will deny the UMDNJ Defendants' motion without prejudice.

The motion will also be denied as to the JCMC Defendants. They have argued that if the § 1985 civil rights conspiracy claims against the UMDNJ Defendants are precluded, then no § 1985 claim against the JCMC Defendants can have any merit because, in the absence of a viable conspiracy claims against the state actors (the UMDNJ Defendants) the JCMC Defendants cannot be found to have acted under color of state law. The Supreme Court has held that civil rights liability may attach to a private party where that party is "jointly engaged with state officials in the challenged action." Dennis v. Sparks, 449 U.S. 24, 27-28 (1980). The JCMC Defendants have not carried their Rule 56 burden to demonstrate that, on this record, no reasonable factfinder could conclude that they, and specifically Holmes, was not jointly engaged with Wilson and/or Scholz to deprive Pal of her "expected recommendations," allegedly in violation of § 1985. Moreover, contrary to the JCMC Defendants' argument, even if the Court were to determine that the § 1985 claims against the UMDNJ Defendants were barred under a preclusionary doctrine, the absence of a claim against the state actor, whether by the plaintiff's choice not to join the state actor in suit, inability to proceed under applicable legal doctrine or dismissal of the claim against the state actor, does not estop a plaintiff from proceeding with a § 1985 claim against the private actor. Id. at 27-30. If a conspiracy to deprive a plaintiff of constitutional rights is demonstrated, "the private parties are not absolved of liability because one or all of the co-conspirators who are state actors or officials are immune or because one or all of the state co-conspirators are not joined in the case, or are dismissed from the case." Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 539 (E.D.Pa. 1982) (citing Dennis, 449 U.S. at 27-30).

**III.　CONCLUSION**

For the foregoing reasons, the Court will deny the motions for summary judgment filed by the UMDNJ Defendants and JCMC Defendants without prejudice. An appropriate order will follow.

　s/ Stanley R. Chesler　
STANLEY R. CHESLER
United States District Judge

Dated: November 19, 2013