NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEELU PAL, | |
| Plaintiff, | **Civil Action No. 11-6911 (SRC)** |
| v. | **OPINION** |
| JERSEY CITY MEDICAL CENTER, et al., | |
| Defendants. | |

**CHESLER**, District Judge

      This matter comes before the Court on the renewed motion for summary judgment filed by Defendants University of Medicine and Dentistry of New Jersey ("UMDNJ"), Peter Scholz, M.D. and Dorian Wilson, M.D. (collectively the "UMDNJ Defendants").[1]  Pro se Plaintiff Neelu Pal opposes the motion for summary judgment. The Court has considered the papers filed by the parties and proceeds to rule without oral argument, pursuant to Federal Rule of Civil Procedure 78.  For the reasons that follow, the Court will grant the motion for summary judgment.

      The Court also discusses in this Opinion a motion for leave to amend the Complaint, filed by Pal, and a motion filed by the UMDNJ Defendants for the imposition of sanctions against Pal pursuant to Federal Rule of Civil Procedure 11.  These motions will be denied.

---

[1] The Court will refer this group of Defendants by specifying their UMDNJ affiliation to distinguish them from another group of Defendants affiliated with the Jersey City Medical Center. The other group of Defendants will be referred to as the "JCMC Defendants."

1

I.     **BACKGROUND**

Plaintiff Neelu Pal, a female of Indian origin, is a medical doctor and board certified general surgeon. (The Court will refer to her as "Plaintiff" or "Dr. Pal.") She had been a resident in the cardiothoracic surgery program at UMDNJ-Robert Wood Johnson Hospital ("UMDNJ-RWJ") but resigned in February 2009 after she was informed that her contract would not be renewed. Dr. Pal believed that the non-renewal was a retaliatory action in response to her complaints that the staff had discriminated against her based on her race, gender and national origin. She initiated suit in New Jersey state court against various doctors from UMDNJ-RWJ, seeking redress for the allegedly retaliatory non-renewal. The Court will refer to that lawsuit as the "State Action."

In or about March 2009, after resigning from the cardiothoracic surgery program, Dr. Pal applied for privileges to practice as a general surgeon at Jersey City Medical Center ("JCMC"). JCMC denied her application, and Dr. Pal was unsuccessful in her appeal of that decision. Accordingly, on October 4, 2011, JCMC filed an Adverse Action Report with the National Practitioner Data Bank, regarding the denial of privileges. Shortly thereafter, Dr. Pal filed this separate lawsuit in federal court, claiming that JCMC's denial of her application for privileges and related filing of the Adverse Action Report have rendered her unable to obtain privileges at any medical facility and essentially destroyed her career as a general surgeon. Insofar as the UMDNJ Defendants named in this lawsuit are concerned, Pal alleges that they gave JCMC negative references in retaliation for her complaints of discrimination while at UMDNJ-RWJ.

While this lawsuit was pending, Dr. Pal, represented by legal counsel, tried the State Action before a jury. A judgment in favor of Pal was entered in April 2013 awarding her $1.6

2

million in damages on her claim for the retaliatory non-renewal of her contract in UMDNJ-RWJ's cardiothoracic surgery program.

After that judgment was entered, the UMDNJ Defendants moved for summary judgment here on the grounds that Plaintiff's litigation of the State Action precludes her from pursuing her claims in this action by operation of the entire controversy doctrine and/or the doctrine of issue preclusion. The Court denied the motion for lack of sufficient evidence to carry their burden of establishing either of these two affirmative defenses as a matter of law. The UMDNJ Defendants had argued that Plaintiff expanded her claims in the State Action to go beyond the non-renewal of her contract in the cardiothoracic surgery program and encompass her overall unemployability due to UMDNJ's negative references and the denial of her application for privileges at JCMC. In that motion, the UMDNJ Defendants relied heavily on the jury verdict sheet, which posed the following question:

> 7. Did Dr. Pal prove by a preponderance of the evidence that UMDNJ provided negative references about her to other health care facilities and, if so, that that conduct was retaliation, causally connected to her communications regarding discrimination?

(Tipton Cert., Ex. U. at 2.) The jury's unanimous response to that question was "No." (Id.) The Court reasoned that although Defendants had presented portions of the State Action record indicating that the scope of that action was broadened to litigate the impact of UMDNJ's alleged negative references on Dr. Pal's entire medical career, the evidence offered too truncated a view of the State Action for the Court to determine exactly which facts and/or issues were addressed and decided. On the record presented, the Court could not conclude that either of the preclusionary doctrines applied. The Court's complete analysis is set forth in its Opinion of November 19, 2013.

In this renewed motion, the UMDNJ Defendants once again argue that this lawsuit is barred by the entire controversy doctrine and/or issue prelusion. They proffer additional portions of the State Action record, including the full transcript of the State Action court's jury charge, the original and amended expert reports served by Dr. Pal's expert, trial testimony and pertinent portions of the opening and closing statements made by Dr. Pal's attorney. The Court's discussion below will concentrate on whether the additional evidence suffices to demonstrate that there is no genuine issue as to the preclusive effect of the State Action on this lawsuit.

## II.  DISCUSSION

### A. The UMDNJ Defendants' Summary Judgment Motion

Federal Rule of Civil Procedure 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (construing the similarly worded Rule 56(c), predecessor to the current summary judgment standard set forth in Rule 56(a)). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court "must view the evidence 'in the light most favorable to the opposing party.'" Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). It may not make credibility determinations or engage in any weighing of the evidence. Anderson, 477 U.S. at 255.

The UMDNJ Defendants argue that they are entitled to summary judgment based on affirmative defenses on which they bear the burden of proof. "When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). Once the moving party has satisfied its initial burden, the party opposing the motion must establish the existence of a genuine issue as to a material fact. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001), overruled on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs, 134 S. Ct. 773 (2014). However, the party opposing the motion for summary judgment cannot rest on mere allegations; instead, it must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; see also Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) (holding that "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment").

The UMDNJ Defendants have demonstrated, in accordance with Rule 56(a), that the claims Dr. Pal asserts against them in this suit are barred by the doctrine of collateral estoppel. Collateral estoppel, also known as issue preclusion, is an equitable doctrine that prevents parties from relitigating issues that have already been "fairly litigated and determined." First Union Nat. Bank v. Penn Salem Marina, Inc., 190 N.J. 342, 352 (2007). Put differently, the Supreme Court

5

has held that issue preclusion bars "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (quoting New Hampshire v. Maine, 532 U.S. 742, 748 (2001)).  Because the UMDNJ Defendants contend that this action is barred by the preclusive effect of the State Action, the preclusion rules of the State of New Jersey govern the analysis here.  Interfaith Comm. Org. Inc. v. PPG Indus., Inc., 702 F.Supp.2d 295, 303 (D.N.J. 2010).  "[T]he [state court] judgment will have a preclusive effect in the federal court if the judgment would have had a preclusive effect in the court that rendered the judgment." Id. The Supreme Court of New Jersey has held that the party asserting that collateral estoppel applies must demonstrate that:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

First Union Nat'l Bank, 190 N.J. at 352.

In this lawsuit, Dr. Pal asserts three claims against the UMDNJ Defendants: a claim against Dr. Wilson for conspiracy to deprive Pal of her career and livelihood on the basis of her gender and/or national origin, in violation of 42 U.S.C. § 1985; a similar § 1985 claim against Dr. Scholz; and a post-employment retaliation claim under the New Jersey Law Against Discrimination ("NJLAD") against UMDNJ and Dr. Scholz. (See Am. Compl., Counts I, II and VII.)  These claims all depend upon the allegation Dr. Scholz, the director of the cardiothoracic surgery residency program at UMDNJ-RWJ, and Dr. Wilson, director of the general surgery residency program at UMDNJ-Newark, provided negative information about Dr. Pal in

6

connection with her application for privileges at JCMC "because of Plaintiff's gender and/or national origin and/or because she made allegations against UMDNJ for discrimination and harassment against her." (Id., ¶¶ 134, 149.) According to the Amended Complaint, Dr. Nathaniel Holmes, the chair of the JCMC credentials committee, contacted each one of these UMDNJ references regarding Dr. Pal's application to JCMC. The Amended Complaint alleges that Dr. Scholz informed Dr. Holmes that Dr. Pal "had made allegations of discrimination, the hospital investigated the claims and found no merit to them, UMDNJ-RWJMS demanded that Pal retract her allegations, Pal refused, and UMDNJ-RWJMS asked Pal to leave." (Id., ¶ 98). As for Dr. Wilson, the Amended Complaint alleges that, although he had provided a positive recommendation for Dr. Pal, in his conversation with Dr. Holmes, he "made negative comments about Plaintiff and stated, in essence, that she was not to be trusted." (Id., ¶ 102.)

  The identical issue of whether Dr. Scholz and Dr. Wilson gave negative references in retaliation for Pal's complaints of discrimination and as a result rendered her unable to practice as a surgeon was actually litigated and decided in the State Action. The identity of the issues is, as the Court noted in its Opinion on the first motion for summary judgment, strongly suggested by the verdict sheet in the State Action, which expressly asked the jury to determine whether "Dr. Pal prove[d] by a preponderance of the evidence that UMDNJ provided negative references about her to other health care facilities and, if so, [whether] that conduct was retaliation, causally connected her communications regarding discrimination[.]" Previously, the Court held that, without a more complete record of the State Action, it could not conclude that a reasonable juror would find that this question on the verdict sheet presented the exact issue raised in this federal action. On this motion, the UMDNJ Defendants have proffered the necessary evidence to establish that collateral estoppel applies.

7

Though the State Action was initiated to address solely the alleged retaliation by various UMDNJ-RWJ doctors, including Dr. Scholz, by not renewing Dr. Pal's residency contract, the evidence demonstrates that Dr. Pal expanded her previous lawsuit to include a second alleged act of retaliation: the same negative references at issue in this action. The trial of the State Action covered both the Holmes-Scholz and Holmes-Wilson conversations. Dr. Pal's attorney, in his opening statement, told the jury that it would hear evidence concerning Dr. Scholz's communication to Dr. Holmes about Dr. Pal's unsubstantiated complaints of racial discrimination and that "because of that, [JCMC] denied her application and that triggered what's called adverse action report with the National Practitioner Data Bank." [Tipton Cert., Ex. Q at 41:24 -42:2.) Counsel went on to add that the evidence would show that "because she was denied privileges at Jersey City Medical Center, every hospital that she ever applies to again will see she had a problem and she got denied." (Id. at 42:6-9.) Regarding Dr. Scholz's conduct, Dr. Pal's attorney argued that "Clearly, this resulted in the destruction of Dr. Pal's career. At this point she had been out of the operating room for over four years. Every time she gets denied it gets added to that data bank and so it perpetuates the situation." (Id. at 43:4-8.) Although Dr. Wilson, of UMDNJ-Newark, was not named as a defendant in the State Action, information about her conversation with Dr. Holmes was presented to the jury. Dr. Pal subpoenaed Dr. Holmes as a non-party witness in the State Action. Her counsel specifically asked Dr. Holmes about his conversation with Dr. Wilson in connection with Dr. Pal's application for privileges. The testimony on the subject of Dr. Wilson's changed opinion was as follows:

> Q. . . . we were talking about Dr. Wilson's reference. I've showed it to you today on the board and it's clear that his written reference said that it was recommended highly without reservation, correct?
>
> A. The written recommendation, yes.

>Q. Okay. And that he said that all of her skills were good, correct?
>
>A. That is correct.
>
>Q. Who is Dr. Wilson?
>
>A. Dr. Wilson is professor, a professor at UMDNJ Newark.
>
>Q. So he's related to UMDNJ, correct?
>
>A. That is correct.
>
>Q. And then for some reason, we don't know, he changed his mind, somebody from UMDNJ, correct?
>
>A. When I spoke to him on the phone, yes, he had a different opinion.

(4/22/14 Tipton Cert., Ex. F at 47:9-48:1.) This evidence undermines Plaintiff's argument that the issue in the State Action was distinct because the judge emphasized that UMDNJ-RWJ, and not UMDNJ-Newark, was the named institutional defendant. It is clear that while the State Action complaint was never formally amended to add allegations beyond the initial claims of retaliatory non-renewal of Dr. Pal's residency at UMDNJ-RWJ, the negative references given after Dr. Pal resigned from UMDNJ-RWJ became a key aspect of the State Action. In other words, though the UMDNJ Defendants named in this case were not parties to the State Action at the time of trial,[2] the conduct of both Dr. Scholz and Dr. Wilson, and in particular the impact of their conversations with Dr. Holmes on the JCMC privileges application, was at issue in the State Action.

The court's jury charge in the State Action further demonstrates that the same issue of the allegedly retaliatory communications by Dr. Wilson and Dr. Scholz which are critical to Plaintiff's claims in this case are identical to the issue decided in the State Action. In the charge,

---

[2] It appears that Dr. Scholz was named as a defendant when the State Action was initiated, but Plaintiff later withdrew her claims against the individual UMDNJ-RWJ doctors to pursue only the institution at trial.

9

the court explained to the jury that "there are two parts to a retaliation claim that you can consider." (Tipton Cert., Ex. T at 54:19-20.)  The court expressly distinguished between the non-renewal of the cardiothoracic residency and the negative references as acts of retaliation for her complaints of discrimination to UMDNJ-RWJ, instructing the jury that it could find that both were retaliatory, neither was, or one was and the other was not.  (Id. at 54:1-7.)

The record, moreover, unequivocally shows that Dr. Pal actually litigated the issue of whether the Scholz-Holmes and Scholz-Wilson communications were retaliatory negative references.  The Court need only look to testimony elicited by Pal's attorney on the subject, the jury charge and the verdict sheet, as set forth above.  The issue was further highlighted by Dr. Pal's counsel in his opening statement at trial and in his summation to the jury, when he referred to the "domino effect" of the negative references (Tipton Cert., Ex. S at 106-07, 115), the denial of her application for privileges at JCMC, the Adverse Action Report, and her inability to find work as a general surgeon.

Dr. Pal attempts to point to a disputed issue of fact as to the extent of the matters litigated.  She argues that the State Action was limited to the impact of UMDNJ's conduct on her ability to practice as a cardiothoracic surgeon, whereas in this action, she seeks redress for the destruction of her entire medical career, allegedly precipitated by the negative references and ensuing adverse action report filed by JCMC when it denied her application for privileges to practice as a general surgeon.  In addition to the evidence showing that the State Action in fact decided the issue of whether "UMDNJ provided negative references about [Pal] to other health care facilities [in] retaliation" for Pal's complaints of discrimination, Dr. Pal's argument is further belied by her own expert report in the State Action.  Initially, Dr. Pal's expert had calculated her losses based on his assumption that, having been deprived of a career as a

cardiothoracic surgeon, she could nevertheless work as a general surgeon and accordingly concluded that her future lost wages claim was worth approximately $1.3 million. Dr. Pal later served and relied upon an amended expert report, in which he considered the denial of privileges at JCMC and the adverse action report filed on October 7, 2011 with the NPDB. The amended expert report stated that "due to interference by UMDNJ [Pal] has been unable to find a position as a General Surgeon, even though she is board certified in General Surgery" and increased her lost earnings claim to over $10 million. [Tipton Cert., Ex. P.] Moreover, a motion for summary judgment filed by Dr. Pal in the State Action recited as material facts the communications with Holmes, the denial of Pal's application for privileges at JCMC, the fact that the adverse action report filed by JCMC was based upon "negative references regarding the physician's inability to work with others," the adverse action report's impact on her ability to find work as a physician.

  The remaining three factors in the collateral estoppel analysis are also satisfied. The court in the State Action reached a final judgment on the merits. The State Action was tried to verdict, with the jury unanimously concluding that the negative references provided by UMDNJ were not retaliatory. The determination of that issue was essential to the State Action judgment. As reflected by both the amended report prepared by Pal's expert and her attorney's arguments, Pal contended that as a result of the negative references and the adverse action report, she could not obtain a surgical position, even in her board-certified general surgeon capacity, and lost over $10 million in front pay. Based on the jury's verdict, however, the judgment in favor of Dr. Pal was limited to damages on her claim of retaliatory non-renewal. She was awarded a total of only $1.6 million dollars, which included a $1 million award for lost future earnings. The jury found that no causal link existed between Dr. Pal's complaints of discrimination and UMDNJ's negative references. This finding removed her claims of ensuing unemployability as a general

11

surgeon from the damages calculation and was thus clearly essential to the judgment. Finally, Dr. Pal, the party against whom issue preclusion is asserted, was herself a party to the State Action. She participated in the State Action, which was tried before a jury over the course of several weeks. Dr. Pal was represented by legal counsel, who engaged in discovery, motion practice and active examination and cross-examination of witnesses at trial.

Dr. Pal tries to avoid application of collateral estoppel by arguing that it would be unfair and inequitable to permit the UMDNJ Defendants to avail themselves of this defense because they refused to consolidate the State Action with this federal lawsuit when Plaintiff broached that idea. This argument fails for lack of legal and factual support. While Plaintiff indicates that the attorney who had been representing her raised this topic informally among counsel, there is no record of her making a formal motion for consolidation, nor, for that matter, any opposition by the UMDNJ Defendants. She also gives no indication that the "consolidation" of lawsuits pending before different courts – one federal and one state – would be legally feasible.

In short, the UMDNJ Defendants have carried their burden on this Rule 56(a) motion of demonstrating that a reasonable juror would find the claims against them barred by collateral estoppel. Accordingly, their motion for summary judgment will be granted.

### B. Plaintiff's Motion For Leave To Amend the Complaint

Plaintiff asks for leave to file a Second Amended Complaint which would, among other changes, add an NJLAD post-employment retaliation claim against Dr. Wilson, reinstate NJLAD claims against the JCMC Defendants (which had been withdrawn upon the filing of the First Amended Complaint) and a claim under 42 U.S.C. § 1981 against the JCMC Defendants. Although Federal Rule of Civil Procedure 15(a) provides that a motion to amend the complaint should be granted freely when the interests of justice require, the instant motion brought by

Plaintiff must be denied. It is well-established that motions to amend may be denied where there is undue delay, bad faith or dilatory motive by the movant or futility of the amendment. Foman v. Davis, 371 U.S. 178, 182 (1962).

At the very least, the motion is prejudicially untimely, with no apparent justification for Plaintiff's dilatory conduct. The Court's scheduling order set an October 3, 2012 deadline for motions to add new parties or amend the pleadings. Plaintiff in fact had acted within that time frame, earlier in the action, when she filed a motion for leave to file the First Amended Complaint, which has remained the operative pleading since it was filed in accordance with the Court's order. This motion, the fifth Rule 15 motion filed by Plaintiff, was filed on April 7, 2014. Long after the scheduling order's deadline, and two-and-a-half years after initiating this litigation, she seeks to add numerous factual allegations as well as name additional defendants. This excessive delay prejudices Defendants, who would be forced to conduct additional discovery on the new claims. Dr. Pal does not even attempt to explain why she has delayed in seeking to amend the complaint further, particularly when the factual allegations, legal claims and parties she wishes to add are based on the same events as the prior pleadings, namely, the negative references from UMDNJ and the denial of her application for privileges at JCMC.

Moreover, the amendment Plaintiff seeks would unfairly prolong proceedings. The Court notes both the UMDNJ Defendants and the JCMC Defendants had filed motions for summary judgment several months after the Court denied a previous, similarly untimely motion brought by Plaintiff for leave to file a Second Amended Complaint. (See May 14, 2013 Opinion & Order). Plaintiff opposed the motions for summary judgment, and they were denied without prejudice by the Court. Now, when faced with the UMNDJ Defendants' renewed motion for summary judgment and the possibility that her action may reach a conclusion, Plaintiff attempts to thwart

that effort, not by pointing to facts that demonstrate the potential merit of her existing claims, but by continuing to expand the litigation. This is precisely the situation that lies within the exception to Rule 15(a)'s liberal amendment standard.

Plaintiff's motion for leave to file a Second Amended Complaint will be denied.

### C. Motion for Rule 11 Sanctions

The UMDNJ Defendants have also filed a motion, pursuant to Rule 11, for an order imposing sanctions on Plaintiff for conduct they contend constitutes material misrepresentations to the Court regarding her health condition and efforts to delay proceedings. In particular, they point out that Plaintiff has sought numerous continuances and extensions in this lawsuit by representing to the Court that she is dealing with significant health problems and is too ill to litigate. Yet, Defendants maintain, she has in the meantime been aggressively litigating, pro se, two other actions: a medical malpractice action she filed in New York and a suit filed against her in Nevada by her former attorney. According to the papers filed in support of this motion for sanctions, during the same exact time period in which she asked this Court "to continue all proceedings in this case for a legitimate medical reason," that is, the fall of 2013, Dr. Pal was actively filing numerous motions and other pleadings in the Nevada case. She also filed an order to show cause and attended a pretrial conference in the New York case. Defendants further note that Dr. Pal similarly invokes her medical condition in other cases when deadlines are looming. They argue that Dr. Pal's conduct reveals the falsity of her representations to the Court, and moreover, displays a pattern of raising her claimed medical disability for the purpose of delay or to focus on other legal matters in which she is involved.

Rule 11 imposes an affirmative duty on an attorney and/or a party to conduct a reasonable inquiry into the factual and legal bases of all claims before filing any document with

14

the court. Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 551 (1991); Bensalem Twp. v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303, 1314 (3d Cir. 1994). In relevant part, Rule 11 provides:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper-whether by signing, filing, submitting, or later advocating it-an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

Fed. R. Civ. P. 11(b)(1).

In determining whether a party or attorney has violated the duties of Rule 11, the Court must apply an objective standard of reasonableness under the circumstances. Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 92 (3d Cir. 1988); see also Brubaker Kitchens, Inc. v. Brown, 280 F. App'x 174, 185 (3d Cir. 2008) ("It is well-settled that the test for determining whether Rule 11 sanctions should be imposed is one of reasonableness under the circumstances, the determination of which falls within the sound discretion of the District Court."). Rule 11 authorizes a court "to impose an appropriate sanction" on an attorney and/or party found to have violated the obligations of the rule. Fed. R. Civ. P. 11(c)(1). In this way, the rule seeks "to curb abusive litigation tactics and misuse of the court's process." Gaiardo v. Ethyl Corp., 835 F.2d 479, 482 (3d Cir.1987). The sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

The Court, in its discretion, finds that Rule 11 sanctions are not warranted. While the movants have cast doubt on Dr. Pal's motivation for her applications for extensions and continuances, the record does not sufficiently support their contention that Dr. Pal has

misrepresented the status of her health and/or requested extensions for patently improper purposes. Rule 11 applies to attorneys, represented parties and pro se litigants alike, but this situation does not present the "exceptional circumstances" for which Rule 11 sanctions are typically reserved. Bensalem Twp., 38 F.3d at 1314.

### III.    CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff's claims against the UMDNJ Defendants are barred by collateral estoppel. The motion for summary judgment filed by the UMDNJ Defendants will accordingly be granted. Plaintiff's motion for leave to file a Second Amended Complaint and Defendants' motion for Rule 11 sanctions will both be denied. An appropriate Order will be filed.

      s/ Stanley R. Chesler
    STANLEY R. CHESLER
  United States District Judge

Dated: July 21, 2014